ALARM APPLICATIONS CO., INC., ET AL. *v.* SIMSBURY VOLUNTEER FIRE COMPANY, INC., ET AL.

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued October 5, 1979—decision released February 5, 1980

*Kimball Haines Hunt,* for the appellants (plaintiffs).

*Michael E. Grossmann,* for the appellees (defendants).

ARTHUR H. HEALEY, J. The plaintiffs, Alarm Applications Co., Inc. (hereinafter Alarm Applications), and John Voorvaart, brought an action in two counts against the defendants, Simsbury Fire District (hereinafter fire district) and Simsbury Volunteer Fire Company, Inc. (hereinafter fire company). The defendant interposed a motion to strike both counts of the complaint, which the court granted. The appeal to this court followed.

Both counts of the complaint are directed to both defendants. In the first count the corporate plaintiff alleges the following: The fire district was established as a corporation pursuant to General Statutes §§ 544 and 545 of the Revision of 1930 for the sole and express purpose of extinguishing fires. The fire district has the power to and does levy and collect property taxes to finance the necessary costs involved in extinguishing fires. The territorial limits of the fire district are coextensive with the

territorial limits of the town of Simsbury except that portion of the town within the Tariffville fire district. The fire company is a Connecticut non-stock corporation created pursuant to Article 7 § 1 of the bylaws of the fire district for the sole purpose of preventing and extinguishing fires. The fire district is responsible for directing and supervising the conduct and operation of the fire company and supplying it with all the equipment necessary for preventing and extinguishing fires. Alarm Applications, a Connecticut stock corporation whose principal office is in Simsbury, is engaged in the sales, service, dealing and trading for profit of, among other things, fire prevention equipment and fire extinguishers in Simsbury and contiguous areas. The fire company is now, and for a long time up to the present has been, engaged in selling and servicing fire extinguishers and fire prevention equipment for profit within the town of Simsbury and contiguous areas. Such retailing activities of the fire company require it to engage in contracts for the purchase and subsequent sale of fire extinguishers, creating debts against it to be paid in the future. The gross income of Alarm Applications has been and continues to be lessened because of the competitive retailing activities of the volunteer fire company, which have been permitted and condoned by the fire district. Finally, the last paragraph of the first count alleges that there are actual, bona fide and substantial questions and issues in dispute and a substantial uncertainty of legal relations requiring judicial determination. The plaintiff seeks a declaratory judgment determining whether the alleged retailing activities of the fire company are "ultra vires, and unauthorized" in view of the fact that the fire company is a non-profit corporation that was set up and directed by

the fire district, which in turn, is limited by the town of Simsbury to the sole public purpose of extinguishing fires. In the event that the activities alleged are found to be ultra vires and unauthorized, injunctive relief is sought restraining both defendants from "condoning, permitting and engaging in the retailing activities."

In the second count, the individual plaintiff incorporates all of the allegations of the first count and then goes on to make these additional allegations: The plaintiff Voorvaart is a resident of Simsbury, a property owner and property taxpayer within the fire district. The retailing activity of the fire company is "an unauthorized commercial business" and has no relation to the purpose of a nonprofit corporation established for the purpose of preventing and extinguishing fires. The property taxes paid by the plaintiff to the fire district have, "by necessary and permissible inference," been used by the fire company in the conduct of the "unauthorized private commercial business" complained of. Again, the existence of substantial questions and the uncertainty of the legal relations between the parties requiring judicial determination is alleged. The relief sought is a declaratory judgment determining whether the use of tax revenues from property taxes levied by the fire district "to support and conduct the private commercial activities of the . . . Fire Company" violates the plaintiff's rights under the due process clause of the federal constitution's fourteenth amendment. In the event that the court concludes that the plaintiff's rights have been violated, injunctive relief against both defendants is also sought.

The defendants moved to strike the first count alleging that Alarm Applications "does not have

standing to ask for the enjoinment [sic] of ultra vires activities of the Simsbury Volunteer Fire Company, Inc." The motion to strike the second count was based on the claim that Voorvaart "has not alleged standing to maintain a taxpayers' suit against the defendants."[1]

The motion to strike, Practice Book, 1978, § 151, replaced the demurrer in our practice. Its function, like that which the demurrer served, is to test the legal sufficiency of a pleading. Practice Book, 1978, § 152; cf. *McAnerney* v. *McAnerney,* 165 Conn. 277, 282, 334 A.2d 437 (1973). The motion to strike, like the demurrer, admits all facts well pleaded. Cf. *Cyr* v. *Brookfield,* 153 Conn. 261, 263, 216 A.2d 198 (1965); *Weaver* v. *Ives,* 152 Conn. 586, 589, 210 A.2d 661 (1965). "The allegations are entitled to the same favorable construction as a trier would be required to give in admitting evidence under them; *Benson* v. *Housing Authority,* 145 Conn. 196, 199, 140 A.2d 320 [1958]; and if facts provable under the allegations would support a defense or a cause of action, the demurrer [motion to strike] must fail. *Cyr* v. *Brookfield,* 153 Conn. 261, 263, 216 A.2d 198 [1965]." *Stradmore Development Corporation* v. *Commissioners,* 164 Conn. 548, 550–51, 324 A.2d 919 (1973). We must examine each count of the complaint, assuming the truth of all well pleaded facts, to determine whether the particular plaintiff under each count has standing to sue.

Standing concerns the legal right of an individual to set the machinery of the courts in operation. *Belford* v. *New Haven,* 170 Conn. 46, 52, 364 A.2d

---

[1] In this opinion, when discussing the first count, the term "plaintiff" refers to Alarm Applications; when discussing the second count, the term "plaintiff" refers to John H. Voorvaart.

194 (1975). Although our constitution does not contain a case or controversy clause like that found in article III of the United States constitution, which has generated a large body of federal law on standing, we have long recognized that a person is not "entitled to set the machinery of the courts in operation except to obtain redress for an injury he has suffered or to prevent an injury he may suffer, either in an individual or a representative capacity." *Basssett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294 (1953). An individual also has standing to litigate a claim where that right is conferred by statute. See, e.g., General Statutes § 22a-16. Because the complaint is in two counts and involves two different plaintiffs, the standing or capacity to sue of each plaintiff will be discussed separately.

## I

The single ground upon which the defendants base their motion to strike the first count is that the corporate plaintiff does not have standing to seek injunctive relief from the alleged ultra vires activities of the fire company. While acknowledging that it is not among the parties provided for in General Statutes § 33-429, as the court below concluded, the plaintiff contends that it has a common-law right to challenge the activities complained of. The defendants counter that no such common-law right of action survived the passage in 1959 of the Connecticut Nonstock Corporation Act enacted as chapter 617 of the Public Acts of 1959. With this argument the trial court agreed and, therefore, granted the motion to strike the first count.

We need not reach the question of whether a common-law right of action survived the passage

of the Connecticut Nonstock Corporation Act because that act is not applicable to the fire company or the fire district. In its definitional section, General Statutes § 33-421 (e), the act excludes from the definition of "corporation," as that term is used in the act, the following entities: "towns, cities, boroughs or any municipal corporation or department thereof." The defendant fire district is a quasi-municipal corporation. See *Larkin* v. *Bontatibus,* 145 Conn. 570, 576, 145 A.2d 133 (1958); 1 McQuillin, Municipal Corporations (3d Ed.) § 2.29. We assume, without deciding, that the fire company was validly created pursuant to the bylaws of the fire district.[2] Because the fire company under the circumstances of this case serves a public function, it may for our purposes be characterized as a quasi-municipal corporation governed by the law pertaining to municipal corporations. See 1 McQuillin, op. cit., § 2.17. Therefore, the plaintiffs' citation to cases recognizing the right of private parties, under certain circumstances, to bring actions against a private corporation on the ground that it was exceeding its corporate powers is not helpful.

The question presented to us is whether a private corporation, in the circumstances disclosed by the allegations of the first count, has standing to seek

---

[2] The power of a fire district to authorize the creation of a nonstock corporation to serve a municipal function is a question that we are not here required to consider. We do note, however, that municipal corporations and, by implication, quasi-municipal corporations are creatures of the state. *Windham Community Memorial Hospital* v. *Willimantic,* 166 Conn. 113, 121–24, 348 A.2d 651 (1974); *Sachem's Head Property Owners' Assn.* v. *Guilford,* 112 Conn. 515, 517–18, 152 A. 877 (1931); 1 McQuillin, Municipal Corporations (3d Ed.) § 2.13.

a declaratory judgment that certain acts of a quasi-municipal corporation are ultra vires and unauthorized and to obtain injunctive relief restraining them.

We have long recognized the capacity of taxpayers of towns and cities to challenge the legality of the actions of their municipal officers by seeking injunctive relief against such action. See *Belford* v. *New Haven,* 170 Conn. 46, 52–53, 364 A.2d 194 (1975); *Bassett* v. *Desmond,* 140 Conn. 426, 430, 101 A.2d 294 (1953); *Sauter* v. *Mahan,* 95 Conn. 311, 314, 111 A. 186 (1920); *Mooney* v. *Clark,* 69 Conn. 241, 244, 37 A. 506 (1897); *New London* v. *Brainard,* 22 Conn. 553, 557 (1853). Such actions may also be brought where the alleged improper action is that of a quasi-municipal corporation. See *Larkin* v. *Bontatibus,* supra. Absent the existence of another special legal relationship,[3] not here alleged, however, this court has not recognized the capacity of an individual or a private corporation that has not alleged taxpayers' status to maintain an action challenging the propriety of the conduct of a municipal corporation. We have said that a party's status as a taxpayer, without a demonstration by him of some tangible injury, does not by itself confer standing upon him where the defendant is a municipal corporation. *Bell* v. *Planning & Zoning Commission,* 174 Conn. 493, 497–98, 391 A.2d 154 (1978); *Belford* v. *New Haven,* 170 Conn. 46,

[3] A plaintiff who is not a taxpayer may nonetheless challenge the actions of a municipal or quasi-municipal corporation where another legal relationship exists that provides the basis for standing. See, e.g., *Better Home Heat Council, Inc.* v. *Housing Authority,* 148 Conn. 536, 538, 172 A.2d 610 (1961) (holder of bond issued by quasi-municipal corporation may maintain suit challenging the legality of its action).

51–53, 364 A.2d 194 (1975); *Gannon* v. *Sanders,* 157 Conn. 1, 6–9, 244 A.2d 397 (1968); *Truesdale* v. *Greenwich,* 116 Conn. 426, 430–32, 165 A. 201 (1933).

Thus, our cases in this area have required two conditions for the maintenance of actions seeking to challenge municipal conduct: (1) the plaintiff must be a taxpayer of the defendant municipal entity; and (2) the plaintiff must allege and demonstrate that the allegedly improper municipal conduct causes him to suffer "some pecuniary or other great injury." *Bassett* v. *Desmond,* supra, 430; see *Belford* v. *New Haven,* supra, 53; *Atwood* v. *Regional School District No. 15,* 169 Conn. 613, 617, 363 A.2d 1038 (1975); *Gannon* v. *Sanders,* supra; see 18 McQuillin, Municipal Corporations (3d Ed.) §§ 52.12, 52.24. The first condition ensures that there be some legal relationship or nexus between the plaintiff and the municipal entity that establishes the municipality's duty to expend or allocate tax monies in a manner consistent with law. See 74 Am. Jur. 2d, Taxpayers' Actions § 1; 64 C.J.S., Municipal Corporations § 2122. The second condition ensures that our courts will be called upon to decide matters in which the litigants have a specific, legal interest, as distinguished from a mere general interest, in the subject matter of the controversy. See *Belford* v. *New Haven,* supra, 52–53; *Gannon* v. *Sanders,* supra, 6; *Waterbury Trust Co.* v. *Porter,* 130 Conn. 494, 498, 35 A.2d 837 (1944); see also 74 Am. Jur. 2d, op. cit. § 4.

While the corporate plaintiff has adequately alleged that it has been harmed by certain improper acts of the defendants, it has not alleged that it is a taxpayer to either of the defendants. Such an allegation is essential, and cannot be inferred. A motion to strike, like a demurrer, "is to be tested

by the allegations of the pleading demurred to, which cannot be enlarged by the assumption of any fact not therein alleged. *Blanchard* v. *Nichols,* 135 Conn. 391, 392, 64 A.2d 878 [1949]; *Santoro* v. *Kleinberger,* 115 Conn. 631, 633, 163 A. 107 [1932]." *Wexler Construction Co.* v. *Housing Authority,* 144 Conn. 187, 194, 128 A.2d 540 (1956). Although the trial court granted the motion to strike the first count on the wrong ground, its decision to do so has a proper basis in law and will, therefore, stand. See *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978); *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978); *Leslie* v. *Leslie,* 174 Conn. 399, 402, 389 A.2d 747 (1978); Maltbie, Conn. App. Proc. § 36.

## II

The defendants' motion to strike the second count is based on the claim that the individual plaintiff failed to allege facts sufficient to confer standing to maintain a taxpayers' suit. In this count, unlike the first count, the plaintiff has alleged that he is a taxpayer within the defendant fire district. But he has failed to allege that the challenged activity will result, directly or indirectly, in an increase in his taxes or will in some fashion cause him to suffer "great injury," as our law requires. *Bassett* v. *Desmond,* supra, 430; see also *Rothkopf* v. *Danbury,* 156 Conn. 347, 354, 242 A.2d 771 (1968); 18 McQuillin, Municipal Corporations (3d Ed.) § 52.13. He simply alleges that the property taxes paid by him to the defendant fire district "have, by necessary and permissible inference, been used in the conduct of said unauthorized business by the . . . [defendant] Fire Company." Moreover, although the plaintiff seeks injunctive relief ancillary to his request for a declaratory judgment, he nowhere alleges that

the challenged acts of the defendants will cause him irreparable injury. See *Theurkauf* v. *Miller,* 153 Conn. 159, 161, 214 A.2d 834 (1965). There must be more alleged than the mere use by a municipality of tax revenues for an improper purpose in order to confer standing upon a taxpayer who seeks to challenge such action. See *Atwood* v. *Regional School District No. 15,* supra; *Rothkopf* v. *Danbury,* supra; *Bassett* v. *Desmond,* supra.

It is indeed ironic that the allegation that the corporate plaintiff lacks in the first count is made by the individual plaintiff in the second count and that the allegation the individual plaintiff lacks in the second count is made by the corporate plaintiff in the first count. While it is true that the individual plaintiff incorporates all of the allegations of the first count into the second count, nowhere does he allege any relationship between himself and the corporate plaintiff. Each count must be treated as alleging a separate cause of action. Therefore, on the pleadings, any injury to the corporate plaintiff cannot be imputed to the individual plaintiff. Here also, this court "is limited to and controlled entirely by the information which the complaint itself affords." *McAnerney* v. *McAnerney,* 165 Conn. 277, 282, 334 A.2d 437 (1973); see *Ryan* v. *Knights of Columbus,* 82 Conn. 91, 92, 72 A. 574 (1909). The court did not err in concluding that the individual plaintiff did not have standing to maintain a taxpayers' suit.[4]

There is no error.

In this opinion the other judges concurred.

---

[4] We point out that a ruling granting a motion to strike on the ground that the complaint lacked an essential allegation does not preclude the plaintiff from restating a cause of action by supplying

the essential allegation lacking in the complaint that was stricken. See *Bridgeport Hydraulic Co.* v. *Pearson,* 139 Conn. 186, 196, 91 A.2d 778 (1952) (demurrer); 46 Am. Jur. 2d, Judgments § 510.